JOSEPH GIROUX v. THE STATE.

1. The 1st Section of the order of E. J. Davis, Governor of Texas, dated, "Headquarters State of Texas, Office Adjutant-General and Chief Police, August, 1871," which was directed to election and peace officers, "State guards and militia on duty," was as follows : "I. All persons coming to vote shall deposit their ballots with the least possible delay; and after this is done, they are forbidden, under any pretext, to remain about the polls, or at the county seat (unless this is their residence), during the time of election, but shall return to their homes and usual employments ; and peace officers, State guards, and militia on duty, shall see that this is complied with."   Under this order, a citizen who resided in the country, after voting in town, was rudely ordered by a policeman to leave.   He did not leave the town promptly, but was arrested and

handcuffed by the policeman, though no resistance was made. *Held,* that the policeman was properly convicted of false imprisonment.[1]

2. While an officer in making an arrest is permitted to use all reasonable means to effect it, no greater force can be resorted to than is required to secure the arrest and detention of the prisoner.

3. See this case for facts which did not justify an officer to arrest without warrant, and where the use of handcuffs was neither necessary nor reasonable.

APPEAL from Trinity. Tried below before the Hon. Leroy W. Cooper.

The facts fully appear in the opinion.

*H. W. Moore,* for appellant, urged a reversal of the judgment; and insisted—

1. That even if arrest was injudicious, the defendant, being a judicial as well as a ministerial officer, is not liable for a mistake of judgment, and there is no evidence to show that the defendant was actuated in the slightest degree by malice.

2. That the defendant was only carrying out the or-

---

[1] NOTE.—The following section from the orders emanating from the "headquarters" of the Governor will explain the ostensible purpose of the section quoted in the syllabus. It will be seen, that it made no distinction between social, political, or religious assemblies, but made any " assembling of persons " *prima facie* illegal, if voters were intimidated by *it ;* and the fact that voters were intimidated, converted any other reason for the assembly into a pretext :

" III. All gathering, combination or assembling of persons in numbers at or near the county seat during the time registration is being made or the election is going on, and for the purpose of intimidating voters, is forbidden; and should any such gathering, combination or assembly take place in any county, *it shall be presumed that the same is for said purpose,* or for intimidating voters if such is the effect of the same, whatever might be alleged by such persons as the pretext therefor; and peace officers, State guards, and militia on duty, in such county, are directed to disperse such persons ; *provided, however,* that in this regulation it is not intended to interfere with persons peaceably and quietly waiting at the registration or at the polls for their turn to register or vote."

ders of a superior officer, and these he was bound to obey at his peril.

3.    That being a peace officer, and there being a probability that a breach of the peace would be made by Clark, the defendant was authorized to make the arrest by the Criminal Code and Code of Criminal Procedure.

4.    There being no safe jail in Houston county, the defendant used only the degree of force necessary to secure the prisoner, Clark, and he did no more than the sheriff of the county had been in the habit of doing, to prevent the escape of prisoners.

*Geo. Clark, Attorney-General*, for the State.

ROBERTS, CHIEF JUSTICE.—The defendant was indicted in Houston county for the false imprisonment of William V. Clark, and, the venue being changed, he was convicted, and a fine assessed against him of two hundred dollars. A motion for new trial being overruled, and judgment being rendered upon the verdict, he gave notice of appeal, and was admitted to bail in the sum of one hundred dollars.

The defendant was a policeman, acting under the orders of Governor E. J. Davis, of August, 1871, at and during an election held in the town of Crockett, in Houston county, in the month of October, 1871. It was held under the supervision of Giroux and other policemen, armed for the purpose, in a house wherein the voters were directed to go in one way, vote, and go out another.

Clark being in town to vote, and having, as he said, forgotten his certificate of registration, returned next day with it, hitched his mule forty or fifty yards from the house in which the election was held, and going in, he passed Turner Skidmore, a policeman, sitting in the window near where they were

voting, and holding out his hand with his registration paper and ticket, said to him, "I have got her all right this time;" and Skidmore replied, that it was not striped enough; and Clark said, "d—n his stripes, he did not care any thing about them." Clark then voted, and Giroux said to him, "leave here;" and Clark answered, "by G—d he would leave when he got ready," or, "when he folded up his registration paper." Having folded it up and put it in his pocket, he went out the way he was directed, got on his mule and started home. As Clark was about to get on his mule, he said, "G—d d—n Goobertooth, I will see him after the election is over." Upon being asked by a person between him and the house what he said, he repeated it.

It was admitted that an absent witness, Israel, would swear, if present, that Clark said, while still at the polls, "G—d d—n Giroux, I will fix him after the election," and that Israel told Giroux of it. Clark, upon getting on his mule, went off towards home, and after getting three or four hundred yards, got off of his mule, not hitching it, stepped into the door of a blacksmith shop, and after one or two minutes conversation with a citizen of the town, Giroux and Skidmore rode up, armed with Spencer rifles; Giroux got down, put iron handcuffs on Clark, turned him over to Skidmore, who took him back to the court house, delivered him over to the sheriff, who took off the handcuffs, and Clark gave bond before a justice of the peace for his appearance the next day, and then went home. The evidence shows that Clark wept with mortification and alarm upon being handcuffed. It further shows, that while Clark was in town there was no disturbance further than as here detailed.

By the law then existing, Clark, though a citizen of the county, could not vote unless he had with him his certificate of registration, and exhibited it. Hence his remark to Skidmore upon returning with it, "I have got

her all right this time." The order of the Governor, which was in evidence on the trial, directed that "all persons coming to vote shall deposit their ballots with the least possible delay; and after being done, they are forbidden, under any pretext, to remain about the polls, or at the county seat (unless it is their residence), during the time of election, but shall return to their homes and usual employments; and peace officers, State guards and militia on duty at the polls, shall see that this regulation is complied with." This may explain why Clark was in such haste to get on his mule and start home. What did make him utter the threat against Giroux, who was then and there in command of the armed police force, which was spoken apparently in a sort of soliloquy, upon mounting his mule to start off home? It may have been the peremptory and laconic order of Giroux, when his vote was cast, "Leave here," which may not have been familiar to him. Or it may have been uttered to himself as a sort of relief to his humiliated manhood, in having to pass through the gauntlet of armed men to cast his vote, while he, in common with his fellow-citizens, had been disarmed. It was not shown that Clark was a quarrelsome, a dangerous, or a desperate man. Nor was it shown that there had been any antecedent occurrences as between Clark and Giroux, that would lead to any inference, or give direction to the meaning of Clark's expression that he would "see Goobertooth," or "fix Giroux," after the election. What happened at the time was not sufficient to point with any certainty as to the probable meaning of the threat. It might have been an idle expression of resentment from wounded feelings, or it might have been the almost involuntary outburst of a malignant determination to inflict serious injury, by way of revenge, upon Giroux, if there had been any circumstances to have aided in giving the words that interpretation. It was a threat, under the circumstances, that indicated a design to seek an undefined

redress of some sort, upon some future occasion, but could not be understood as a serious threat to take life, or do some serious bodily harm, amounting to a felony. For that would be attaching to it the highest possible criminality, upon presumption, without any antecedent or concurrent facts upon which to base it.

The question in this case then is, did such a threat so made justify Giroux in imprisoning Clark as he did?

"False imprisonment is the willful detention of another against his consent, and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats, or by any other means which restrains the party so detained from removing from one place to another, as he may see proper." (Paschal's Digest, Article 2169.)

As neither the threat nor the conduct of Clark indicated any intention to commit a breach of the peace, or inflict any injury upon any one, or otherwise violate the law at the time, or during that day on which the election was being held, he could not be lawfully arrested or detained in the manner he was, "for the preservation of order in a meeting for religious, political, or other lawful purposes," "for the preservation of the peace, or to prevent the commission of offenses," or upon any other grounds set forth in the code as an excuse or justification in making an assault upon or detention of a person. (Paschal's Digest, Articles 2173, 2145.)

By the law establishing a "State police," then enforced, policemen were invested with the authority of peace officers, and were bound to obey the orders of the Governor "in relation to the preservation of the public peace, or the execution of the laws throughout the State." (Paschal's Digest, Articles 7209, 6804. For same, see "Called Session," 1870, p. 20, Section 8, and p. 138, Section 52.)

By reference to the Code of Criminal Procedure, Title

II., Chapters 1, 2, "Of preventing offenses by the act of magistrates and other officers," it is made "the duty of every peace officer, when he may have been informed in any manner whatever that a threat has been made by one person to do some injury to the person or property of another, to prevent the threatened injury, if within his power; and in order to do this he may call in aid any number of citizens in his county. He may take such measures as the person about to be injured might, for the prevention of the offense." (Paschal's Digest, Articles 2544, 2540.)

This is where an injury threatened is then about to be inflicted, or parties are then in the act of preparation for its immediate infliction, and not where the threat indicates an intention of some future indefinite injury contemplated, not being then prepared for by any act then done or word spoken.

In the latter case, a peace officer must act under, and can only legally act under, a warrant issued by some magistrate (Pas. Dig., Art. 2547); because such a threat is not in itself an offense.

A peace officer may arrest without a warrant when a felony or breach of the peace is committed in his presence, or within his view, or when verbally ordered by a magistrate, within whose view, or in whose presence a felony or breach of the peace is committed, or in case of felony where there is no time to procure a warrant, and the offender is about to escape. (Pas. Dig., Arts. 2677, 2678, 2680.)

Had Clark seriously threatened to take the life of Giroux, or do him serious bodily injury, in his presence or within his hearing, that being a felony, Giroux, as a peace officer, might lawfully have arrested him without a warrant. (Pas. Dig., Art. 2454; see O. & W. Dig., Penal Code, Art. 784; Pas. Dig., Art. 2677.)

So, too, if he had committed a felony, and Giroux had

received satisfactory evidence of it, upon the representation of a credible person, and Clark was about to escape, he might have arrested him without a warrant, if there was not time to get one. (Pas. Dig., Art. 2680.)

The facts proved do not justify the arrest and detention of Clark under any of these rules which define the powers of a peace officer.

"In making an arrest, all reasonable means are permitted to be used to effect it. No greater force, however, shall be resorted to than is necessary to secure the arrest and detention of the accused." (Pas. Dig., Art. 2697.)

So far as can be seen from the evidence, the manner of the arrest and detention, by putting handcuffs on Clark, was neither necessary nor reasonable. Care has been taken to refer to and present in connection the various provisions of our codes that authorize a peace officer to arrest and detain a person without a warrant, from which it plainly appears that Giroux was not authorized to arrest Clark, unless the threat made by Clark was understood by Giroux, and could have been reasonably understood, under all the circumstances as shown by the evidence, to have been a threat *seriously* made to take his life or do him some serious bodily harm. In considering this proposition, it must be borne in mind that the statute making such a threat a felony, or an offense at all, is a departure from the common law. It has two objects : one, to reach with condemnation the desperately vicious will, as manifested by words alone, before it matures into action ; the other, to prevent an occasion for retributive violence, instigated by anticipated injury. In view of either object there should be no reasonable doubt as to the making of the threat, as to its import when made, and as to its being made seriously, before it should be the foundation for a conviction for a felony. And to justify a peace officer in acting on it, in making an arrest without a warrant, care should be taken either to know

or to be properly informed of such facts as would ordinarily produce a reasonable belief that such a threat had been made as would amount to a felony.

The words of the threat under consideration, in and of themselves, have no specific meaning ; and there being no antecedent or concurrent transactions that aid in pointing to a specific meaning to be affixed to them as used, it will not do to say that it amounted to a threat to take life or do some serious bodily harm, or could be reasonably so understood, or would ordinarily be so understood.

We do not think, therefore, that it constituted a justification of the arrest and detention of Clark as made. The charge of the court was favorable to the defendant, and he cannot complain of it.

The facts justify the verdict of the jury, and there is no error in overruling the motion for a new trial. There are numerous questions raised, as to matters involved, which it is unnecessary to discuss or decide, as many of them are not likely to be the subjects of future judicial investigation. But being satisfied that there is no error in the record of which the defendant has any right to complain, we affirm the judgment.

AFFIRMED.