[No. 2737.]

## William Staples v. The State.

1. **False Imprisonment—Arrest without Warrant.**—The Code of Procedure prescribes all the circumstances which justify an arrest without warrant, viz: 1, when a felony or an offense against the public peace is committed in the presence or view of a peace officer or any other person making the arrest; 2, when a felony or breach of the peace is committed in the presence or view of a magistrate, and he verbally orders the arrest of the offender; 3, in certain cases wherein municipal authorities have established rules authorizing arrest without warrant; and 4, where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, the peace officer may, without warrant, pursue and arrest the accused. Under other circumstances than these an arrest without warrant is illegal, however demonstrable may be the guilt of the accused. (Code Crim. Proc., Arts. 226 to 229, inclusive.)

2. **Same—Evidence in Mitigation of Penalty—Case Overruled.**— Though the defendant in such a case cannot justify the arrest on any ground other than those prescribed in the Code, he should, nevertheless, in mitigation of the penalty, be permitted to prove that he made the arrest because he had reason to believe and did believe that the person arrested was guilty of crime, and that legal proceedings against him had been instituted, and also the nature of such proceedings. The case of *Kirbie* v. *The State*, 5 Texas Court of Appeals, 60, in so far as it holds the contrary, is hereby overruled.

3. **Same—Case Stated.**—On his trial for the false imprisonment of one C., the defendant proposed, but was not allowed, to prove that he (without warrant) arrested C. because the latter had very recently stabbed the defendant's son, and that, after making the arrest, he delivered C. into the custody of an officer. *Held*, that this proof was not admissible in justification of the illegal arrest of C., but was admissible in mitigation of the penalty.

4. **Same.**—The fact that the defendant, when he made the arrest, was accompanied by and acted in concert with an officer, afforded no justification.

5. **What constitutes Detention.**—The rulings in *Maner* v. *The State*, 8 Texas Court of Appeals, 361, as to what constitutes detention, referred to with approval.

Appeal from the County Court of Wise. Tried below before the Hon. G. B. Pickett, County Judge.

The information charged that the appellant, on December 26, 1881, with force of arms, "did wilfully and without lawful authority, arrest and detain one J. C. Cates, without the consent of said Cates, said arrest being then and there effected by the said Staples by the use of threats, and by an illegal arrest, and by putting said Cates in fear of some bodily injury; contrary," etc. The jury found a verdict of guilty, and assessed the punishment at a fine of fifty dollars.

J. C. Cates was the first witness introduced by the State. He testified that at the date laid in the information, and for a long time anterior thereto, he lived in Wise county, Texas, at a distance of about three-quarters of a mile from the west boundary line of Denton county. Very early one Monday morning, about the date alleged in the information, the defendant and one Fry and one Kiser came to the witness's house. Defendant and Fry rode through the gate of the yard and up to the door of the house. Witness went to the door and the defendant asked him if his name was Cates. Witness replied that it was, and then the defendant said, "We have come after you to go to Denton," or "to carry you to Denton." The witness asked by what authority they proposed to carry him to Denton. The defendant replied, "Fry, there, is a deputy sheriff, and that is authority enough; aint that so?" Fry spoke and said, "Yes, we can arrest you anywhere without a warrant." The witness then said that Mr. McCall had just come to see him on some important private business, and asked if he could have a conversation with McCall. Defendant said, "Yes, but be quick about it; we have not long to tarry." Then the witness asked McCall to step around the house, as the business was private. The defendant said, "No, I will go, too, and be present and hear what is said." Witness then abandoned his business with McCall. The defendant told witness to hurry and get his horse, and the witness sent his son for his horse. In a few minutes the horse was ready, and witness went with the defendant and Fry to the town of Denton. He was there turned over to one Sullivan, who, as he understood, was a constable, and who refused to release the witness until he gave a bond of one thousand dollars. Witness was informed that he was charged with having stabbed a son of the defendant, the preceding Saturday night. While the defendant and Fry were at witness's house, the defendant seemed excited. Witness did not refuse to go with them; he saw from their demeanor that they "meant business," and he

thought it was no use to refuse. He considered himself under arrest.

John McCall, the next witness for the State, gave substantially the same account of what transpired at Cates's house when the latter was arrested.

R. H. Hopkins, for the defense, testified that he was the sheriff of Denton county in December, 1881, and that, on the night of Saturday, the twenty-fourth of that month, he was informed by the defendant that one Cates had stabbed a son of the defendant, and witness was asked to arrest Cates. Witness searched for Cates in Denton that night, but did not find him. The next morning the defendant came and asked the witness to go and arrest Cates. Being informed by witness that he could not go, the defendant said: "Alex. Fry will go with me and arrest him," and witness replied, "Then take Fry and go and arrest him." Witness knew where Cates lived. Fry was then a deputy sheriff of Denton county. On the following day, the defendant, Fry and Cates came into the town of Denton, and the latter was turned over to Sullivan, a constable. Cates gave a bond of one thousand dollars, and witness approved it; whereupon Cates was released. He was taken before young Staples for identification.

Other matters are disclosed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. All the circumstances which justify an arrest without warrant or lawful authority are stated in our statute. They are:

1. Where a felony or offense against the public peace is committed in the presence or within the view of the party making the arrest; in which case it may be made by a peace officer *or any other person.*

2. When the felony or breach of the peace has been committed in the presence or view of a magistrate, and such magistrate shall verbally order the arrest of the offender.

3. In cases where municipal authorities have established rules authorizing such arrests in certain cases; and

4. Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has

been committed, and that the offender is about to escape, so there is no time to procure a warrant, such peace officer may without warrant pursue and arrest the person accused. (Code Crim. Proc., Arts. 226 to 229, inclusive.)

In no other case than those enumerated is such an arrest entirely justifiable in law. To make an arrest under any other circumstances or conditions is illegal, even though it may be made to appear that before the arrest the party arrested had committed the identical crime for which he was arrested. And a peace officer or private person assuming to act without warrant under any circumstances not authorized by the statute, is himself a violator of law, and liable to punishment for false imprisonment. But, it is said, if the officer or citizen knew that a crime had been committed, and he arrested the offender without warrant because of his knowledge of the crime and in the interest of society, with no intention to violate the law, how is it that he can be punished criminally without a criminal intent?

As a general rule it is elementary that "in crime the most conspicuous and inseparable element is the intent. The State will not punish an act as a crime unless there is an evil intent either actually indulged or imputable. Where there has been no intention or purpose to disobey the public laws, there cannot in general be a crime." Ordinarily this rule is inflexible in determining the wrongs done to society at large. But "the liberty of the citizen is as important as the interests of society. In fact it is one of the fundamental purposes proposed to be subserved by the organization of society and government. The law provides the instrumentalities by which the personal liberty of the citizen may be restrained, temporarily or permanently, in the interests of society, and these exact instrumentalities must be evoked in case it be sought to effect such deprivation. No person other than an officer can make an arrest, unless a felony or breach of the peace is committed in his presence or within his view, or unless he be specially appointed by a magistrate to execute a particular warrant, or is summoned to the aid of an officer as part of the *posse comitatus.*" (*Alford* v. *The State*, 8 Texas Ct. App., 546.) And even a peace officer, to justify an arrest without process, must, where his action is called in question, be able to show in justification that he acted within the purview of the statute. (*Giroux* v. *The State*, 40 Texas, 97.)

In discussing the reasons for, and circumstances justifying, an arrest without warrant in civil actions for damages, that

great and learned philosophical law thinker and writer, Mr. Cooley, says: "There are sometimes circumstances which in themselves are a command of arrest as imperative as could be any command by official authority. These cases in general are plain, and they rest upon the inherent right of society to defend itself against sudden assaults, not by regular proceedings merely, but in emergencies, by the spontaneous actions of its members. In all civil cases it is not supposed that public justice will suffer, or that any one can be seriously injured or incommoded, by any such delay in arresting a wrongdoer as may be required to obtain proper legal process. Neither in general can any similar delay be supposed prejudicial in the case of minor offenses against the State. But it may be reasonably expected that a felon will flee from justice if an opportunity is afforded him, and also that if he knows he is suspected he will do what may be in his power to obliterate the evidences of his crime. In these circumstances are found forcible reasons for prompt action in his arrest. * * * * When the propriety of an arrest without process is in question, the problem is always how to harmonize the individual right to liberty with the public right to protection. Where process issues, the proceedings required in obtaining it constitute a sufficient precaution against causeless arrests; the magistrate decides on the facts presented to him that sufficient reason exists. But if one without this protection were to arrest upon his own judgment, he ought to be able, when called upon, to show that his judgment was warranted. To do this he should show either, first, a felony actually committed; second, facts that had come to his knowledge which justified him in suspecting the person arrested to be the felon; or, third, a felony being committed, an arrest to stay and prevent it. This seems to be the least that could be required: the fact of felony and personal knowledge of the guilt of the particular person, or reason for suspecting him; and if one errs in these particulars it is better that he be left to take the consequences than that they be visited upon an innocent party who is improperly arrested." (Cooley on Torts, pp. 174, 175).

As seen, however, by our Criminal Code, such a showing does not exonerate when the party making the arrest without warrant is called to answer to a criminal charge of false imprisonment. A private person cannot arrest another on suspicion, and the only instances in which an arrest made without warrant is justifiable are those enumerated in the statute. (*John-*

*son* v. *The State,* 5 Texas Ct. App., 43; *Lacey* v. *The State,* 7 Texas Ct. App., 403; *Alford* v. *The State,* 8 Texas Ct. App., 545; *Giroux* v. *The State,* 40 Texas, 97.)

But whilst such evidence is not competent to establish a complete justification in law, still we are of opinion that, in answer to a charge for false imprisonment, the defendant, in mitigation of punishment, is entitled to show that he arrested the party because he had reason to believe and did believe the party arrested guilty of some crime against the law; and further to show, in connection with and support of such belief, the fact, if such fact exists, that legal proceedings had been instituted against the arrested party for the supposed offense, and the nature of such proceedings. He is entitled to this evidence, and it is a matter to be considered and weighed by the jury in estimating the penalty to be inflicted for the false imprisonment. That the party arrested without warrant may be shown to have been justly suspected of felony, and that such circumstances may well be considered as reducing the real amount of the plaintiff's claim for damages in a civil action for false imprisonment, is well settled. (2 Greenl. Ev., sec. 267). No good reason is seen why, in criminal cases, the same rule does not obtain in mitigation of the penalty. We are aware that a different rule is announced in *Kirbie* v. *The State,* 5 Texas Court of Appeals, 60, and the doctrine seems to be supported by the quotation made from Mr. Archibald's Criminal Practice and Pleading. On general principles and in reason we are of opinion, however, that the rule should be as stated above.

In the case before us the appellant proposed to show that Cates was arrested by him because he, Cates, had, the day or night previously, stabbed his (appellant's) son, and that after the arrest he carried Cates to Denton and turned him over to an officer, who required him to enter into a bond to answer a charge for stabbing defendant's son. We are of opinion that this evidence was admissible, not, indeed, as a justification, but in mitigation of the penalty, and that the court erred in excluding it. For the same reason it was error to refuse to permit the defendant to prove by his son that Cates, the arrested party, had stabbed him the night before the arrest.

It was no justification that defendant was in company and acted in concert with an officer of the law in making the arrest. "If an officer be guilty of trespass, those who act by his command or in his aid will be trespassers also. When called upon,

they aid him at their peril, and they are bound to know whether the officer acts under a legal and valid warrant." (*Oystead* v. *Shed*, 12 Mass., 506; *Mitchell* v. *The State*, 7 Engl. Ark. Rep., 50; *Vinton* v. *Weaver*, 41 Maine, 430.) Upon this point the charge of the court was in strict conformity with the law. Nor was the charge erroneous in its description of the character of the detention which would constitute false imprisonment under the statute. (*Maner* v. *The State*, 8 Texas Ct. App., 361.)

Because the court erred in excluding the evidence, as shown above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 2, 1883.