### HAVERBEKKEN v. HOLLINGSWORTH et al. (No. 6527.)*

(Court of Civil Appeals of · Texas. Austin. Feb. 7, 1923. Rehearing Denied March 28, 1923.)

**1. Appeal and error ⚫══930(3)—Presumed on appeal that trial court found person arrested without warrant was resisting sheriff in arresting another person.**

Where an action against a sheriff for unlawful arrest and imprisonment was defended on the ground that plaintiff resisted defendant in arresting another and committed a breach of the peace in defendant's presence, and the second defense was submitted by special issue. but the first defense was not, the court on appeal will presume, as authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, that the first defense was found for defendant, who was the prevailing party.

**2. False imprisonment ⚫══23—Evidence of title to land held immaterial.**

In an action against a sheriff for unlawful arrest and imprisonment, defended on the ground that plaintiff resisted defendant in arresting another person, and was engaged in a breach of the peace, evidence of the title to land and a road which plaintiff was fencing when arrested was properly excluded as being immaterial.

**3. Arrest ⚫══63(3)—Sheriff held to have properly arrested without warrant; "public place."**

Under Code Cr. Proc. 1911, art. 259, providing that a peace officer may arrest one committing a felony or offense in his presence, and Pen. Code 1911, art. 470, denouncing the use of vociferous language or swearing near a public place, and Pen. Code 1911, art. 472, defining "public place" as being any public road or place at which people are assembled, and Pen. Code 1911, art. 1020, denouncing as a misdemeanor cursing or abusive language, where plaintiff, in the presence of nine persons, swore at a peace officer who accompanied the sheriff, and told the sheriff that he could not arrest a person for whose arrest he had a warrant, and stepped in the sheriff's way to prevent the arrest, the arrest of plaintiff without warrant was proper, on the ground that plaintiff was engaged in a breach of the peace and in resisting a peace officer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Place.]

**4. Arrest ⚫══70—Taking prisoner before most accessible magistrate held a compliance with statute.**

Under Code Cr. Proc. 1911, art. 264, requiring one arrested without an order to be immediately taken before the nearest magistrate, where one arrested without a warrant was taken before the most accessible, though not the nearest, magistrate, there was a sufficient compliance with the statute.

**5. False imprisonment ⚫══40—Charge on duty to bring arrested person before magistrate held correct.**

In an action against a sheriff for unlawful arrest and imprisonment, a charge that an officer arresting without a warrant must immediately take his prisoner before the nearest magistrate, and requiring the sheriff to use all the effort to do so that a highly cautious and prudent man could practically have done under the same or similar circumstances, was correct and was not objectionable for the use of the word "practically."

**6. False imprisonment ⚫══31—Evidence held to show sheriff took prisoner before nearest magistrate.**

In an action against a sheriff for unlawful arrest and imprisonment, evidence *held* to show that he immediately took his prisoner before the nearest magistrate.

**7. Appeal and error ⚫══1002—Verdict on conflicting evidence not disturbed.**

Where a verdict is found on conflicting evidence, it will not be disturbed on appeal.

Appeal from District Court, Coryell County; J. R. McClellan, Judge.

Action by Chris Haverbekken against W. W. Hollingsworth and another. From judgment below, plaintiff appeals. Record affirmed.

S. C. Padelford, of Fort Worth, for appellant.

H. E. Bell, of Gatesville, for appellees.

BLAIR, J. Appellant, Chris Haverbekken, instituted this suit against W. W. Hollingsworth, the sheriff of Coryell county, Tex., and his bondsman, Maryland Casualty Company, a private corporation, for damages alleged to have been sustained by him by reason of appellee W. W. Hollingsworth's illegally, forcibly, and wrongfully arresting appellant, and placing him in jail for more than 24 hours; alleging that he was placed in said jail with negroes, and that he was actually damaged in the sum of $25 by reason of the value of time he lost from his labors; and alleging further that he suffered a great deal of excruciating mental and physical pain, and was humiliated by

---

⚫══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 16, 1923.

thus being illegally exhibited as a criminal to the public, which he denied being; and alleged further that he committed no crime in the presence of or in the view of appellee justifying such arrest, incarceration, and imprisonment, without a warrant of arrest; and further alleging that the arrest was without legal authority and without cause, and the same was maliciously, illegally, recklessly, and intentionally done by the appellee, to appellant's damage in the sum of $5,000. Appellant further alleged that after he was so arrested, appellee failed and refused to carry him before the nearest magistrate, and lodge complaint against him, and have his bond fixed.

Appellee Hollingsworth answered by general denial and general demurrer, and further that he was justified in making the arrest and in placing the appellant in jail as he did, because at the time the arrest was so made, appellant, in his presence and view, committed the offense of disturbing the peace; that he was engaged in an unlawful assembly; and that he was engaged in a riot, as those offenses are defined by the laws of the State of Texas; that he resisted appellee while engaged in the execution of a lawful warrant of arrest upon appellant's brother, Martin Haverbekken. Appellee answered further that he used all possible diligence to obtain a hearing before a magistrate, after having brought the appellant to the nearest magistrate for that purpose.

The proof shows that on or about the 27th of July, 1917, appellant Chris Haverbekken, Martin Haverbekken, Ole Haverbekken, and Jules Storey were engaged in building a fence, inclosing some land which appellant claimed to be owned by his father, and in so doing they fenced across an old road over which Medo Johnson, the adjoining landowner, hauled water for his family use; it being the only way by which the said Johnson could reach the place where he got water. The Johnsons and Haverbekkens were not on good terms, having had trouble a few days before the time in question, about some cattle breaking in Johnson's field, and over which Medo Johnson and Martin Haverbekken had a fight. A complaint had been lodged against Martin Haverbekken for fighting with Medo Johnson, and an arrest warrant had been issued thereon, commanding the sheriff to arrest said Martin Haverbekken. On the above date, the sheriff was proceeding to the Haverbekkens, for the purpose of executing his arrest warrant, and he was informed while en route that some trouble was probably brewing by reason of a fence being built, fencing Medo Johnson off from water. Before the sheriff's arrival, Medo Johnson had gone with his wagon to get some water, and was stopped by trees being cut down across his road, and by the new fence being built by the Haverbekkens and Storey. He protested

that a gate should be left, which the Haverbekkens refused. Johnson then phoned the county judge, who advised him to cut the fence and go for water, and advised him that the sheriff was on his way out there to arrest Martin Haverbekken. Johnson also phoned I. Solberg, who was a deputy sheriff in that community, of the trouble, and the deputy sheriff informed him that he would try to get him some relief. About 2 o'clock p. m. on the above date, the sheriff, accompanied by his two deputies, I. Solberg and Eric Sharpe, arrived at the place where the Haverbekkens and Storey were building the fence, and with them came Medo and Will Johnson. Appellee Hollingsworth, upon his arrival, spoke to the appellant, Chris Haverbekken, and said: "What are you doing down there—celebrating?" in a jocular manner; to which appellant replied, "None of your damned business," and seemed to be angry, according to the witnesses. The sheriff thereupon informed Martin Haverbekken that he had an arrest warrant for him; and the whole party, the three Haverbekkens, Storey, the sheriff, his two deputies, and the two Johnsons proceeded to where Medo Johnson's water wagon was standing. Chris Haverbekken and Johnson engaged in a conversation, in which the witnesses testified that Chris used some very rough language to Johnson, one of the witnesses stating that Chris was "raining hell down there," and cursing Johnson, and that they had to hold them apart to keep them from fighting; and that the sheriff remonstrated with them to keep the peace and to go into court and settle their differences; and that they should leave a gap for Johnson to get water, and settle the differences later in court. Chris Haverbekken refused to leave the gap, stating that it was his father's land, and that he had no authority to leave the gap. Chris continued to talk loud, and used rough language towards Johnson and the sheriff. The sheriff then read his arrest warrant to Martin Haverbekken, and told him to get in the car; whereupon, the appellant got between Martin Haverbekken and the car, and said, "No, G—— d—— you, you are not going to arrest Martin;" at which time the sheriff took hold of or touched Chris Haverbekken on the shoulder, and said: "Get in the car, I will take you also; I will arrest you too." The sheriff then proceeded with his prisoners to Gatesville, the county seat, which was a distance of 20 to 23 miles from the place of the arrest, arriving in Gatesville about dark. He took his prisoners to his office at the courthouse, and went in search of the county judge, who, he was informed, was out of town. He then went to the office of the justice of the peace, but it was closed, and the justice had presumably gone home. He did not seek the commissioner nor the county judge, nor did he phone or attempt to phone any of the

above-named. He did find the county attorney of Coryell county, and stated the facts of the case to him, and sought to file a complaint with the county attorney. He was advised by the county attorney to place the appellant in jail, and that he would file the complaint on the following morning, when the officers came down. The sheriff was not present on the following morning, having to be out of town; but he instructed his deputy, Eric Sharpe, to bring the defendant before the officers as soon as they came down, which was done; instructing them further that when Ole Haverbekken and Chris' father came to admit them on such bond as having been fixed by the officers, the sheriff having told Ole to bring his father in for such purpose. There was no demand made by Chris for hearing before a magistrate; nor does the testimony show that he could have made bond had it been fixed by a magistrate. There was a justice of the peace living at Pancake, in Coryell county, about 16 or 18 miles from the scene of the arrest, but the roads were bad, and they were much better to Gatesville, and it would require less time to go to Gatesville than to go to Pancake to appear before the magistrate, on account of the condition of the roads.

There was considerable evidence as to the ownership of the land that was being fenced by the Haverbekkens and Storey, as well as the right to erect the fence thereon, and of several compromises concerning the differences between the Haverbekkens and Johnsons; but, in view of the verdict of the jury, we do not deem it necessary to find as to that, if it were material to any issue in this case; and we think that it is not, unless it was upon the question of whether or not the appellant was engaged in a riot or an unlawful assembly, and we do not find this to be supported by the evidence.

[1] Two other defenses were interposed by appellee, that is, first, that he arrested appellant because he had committed a breach of the peace in his presence and view; and, second, because appellant had interfered with him in the lawful exercise of his duty, in serving an arrest warrant upon Martin Haverbekken.

The court submitted the first proposition to the jury, but upon the second proposition there appears to be no submission of that question to the jury, nor does it appear from the record that any request was made that this defense be submitted. However, the case having been submitted upon special issues, we must indulge the presumption prescribed in article 1985, Vernon's Sayles' Texas Civil Statutes 1914, which provides:

"Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

And we find there is sufficient evidence in this case to sustain the finding of the trial judge in favor of the judgment, upon the question of appellee's right to arrest the defendant for interfering with him in the lawful exercise of his duties as an officer.

[2] We overrule the assignments of error predicated upon the introduction and exclusion of evidence, as shown by bills of exceptions Nos. 1, 2, and 3, all concerning the title and ownership of the land in question as well as the road, as being immaterial to any issue in this case.

[3] The court submitted this case to the jury upon special issues. Special issues Nos. 1 and 2, and the answers of the jury thereon, are as follows:

"Special issue No. 1: At the time of the arrest of the plaintiff by the defendant Hollingsworth, was the plaintiff engaged in the act of disturbing the peace? Answer this question yes or no, as you may determine from the facts before you." To which the jury answered: "Yes."

"Special issue No. 2: Did the defendant W. W. Hollingsworth, after he had arrested him, immediately take the plaintiff before the nearest magistrate from the place where the arrest was made? Answer yes or no, as you may find the facts to be." To which the jury answered: "Yes."

Proper instructions were given by the court as to what constituted a disturbance of the peace, and the law requiring officers making arrests without warrants to immediately take the person arrested before the nearest magistrate.

By his first and second propositions, appellant assigns as error the action of the trial court in giving special issue No. 1, in that the same is not supported by and is contrary to the evidence in the case, and requested by his special instruction No. 1 the court to peremptorily instruct the jury for appellant upon such issue; and by his second special instruction requested the court to define the measure of damages resulting to him by reason of such illegal arrest. The question submitted for our determination by said proposition is:

"Did the sheriff have the right to arrest appellant, Chris Haverbekken, without a warrant, under the facts and circumstances of this case?"

We think that he did have such right upon at least two grounds: First, for committing a breach of the peace in the presence and view of appellee, a peace officer; and, second, for interfering with appellee, a peace officer, in the lawful execution of his duty, in serving an arrest warrant upon Martin Haverbekken.

On the question of an arrest without a warrant, we find that article 259, Revised Code of Criminal Procedure 1911, provides:

"A peace officer or any other person may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

Article 470 of the Penal Code, Revised Criminal Statutes 1911, defines the offense of disturbing the peace as follows:

"If any person shall go into or near any public place, or into or near any private house, and shall use loud and vociferous or obscene, vulgar or indecent language, or swear or curse, or yell or shriek, or expose his person, 'or rudely display any pistol or other deadly weapon, in a manner calculated to disturb the inhabitants of such public place or private house, he shall be fined in any sum not exceeding one hundred dollars."

Article 472 of the above Penal Code defines a public place as being:

"A public place, within the meaning of the two preceding articles, is any public road, street or alley of a town or city, or any inn, tavern, store, grocery or workshop, or place at which people are assembled, or to which people commonly resort for purposes of business, amusement, recreation or other lawful purpose."

On the question of abusive language, authorizing an officer to arrest without warrant for abusive language used to him, there is no statute other than the above statute of disturbing the peace, and by article 1020 of the Penal Code, Revised Criminal Statutes 1911, it is provided:

"If any person shall, in the presence or hearing of another, curse or abuse such person, or use any violently abusive language to such person, concerning him or any of his female relatives, under circumstances reasonably calculated to provoke a breach of the peace, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in a sum not less than five nor more than one hundred dollars."

On the question submitted to the jury above, under special issue No. 1, we think that their verdict is found upon an abundance of testimony, and it will not be disturbed on appeal. From the moment the sheriff arrived, the appellant was angry and discourteous to him, and commenced cursing, talking loud, and using abusive language to both the sheriff and Medo Johnson, which went to such an extent that a fight was only prevented by the officers holding the parties; and then, too, we find the appellant using this language of and concerning the sheriff, in his presence, "No, G—— d—— it, you are not going to arrest Martin." One witness testified that he said, "No, G—— d—— you, you are not going to arrest Martin"; and the sheriff arrested him immediately upon such words being used. At the very time appellant used the words, he interfered with the peace officer arresting his brother, by stepping between him and the car, to such an extent that the officer had to actually take hold of him, or touch him on the shoulder, to make him desist. This was a sufficient disturbance of the peace as would authorize the sheriff to arrest the appellant without a warrant.

Appellant's contention that this was not a public place is without merit, since our statute provides, as above set forth, that any place at which people are assembled is a public place within the meaning of this article. There were nine men assembled there, and the peace of some of them was evidently disturbed, because some had to hold the others to keep them from fighting, while the sheriff had to actually take one in charge because of his conduct at the time. There is no rule known to us by which you can count heads and tell how many people are necessary to make an assembly. Under the Riot Statute, it only requires three persons to constitute an assembly for a riot, and we are sure that where at least nine men are gathered together, as they were in this case, that they are an assembly which can be disturbed in their peace, as required by this article of the statute.

On the question of interfering with a peace officer in the lawful exercise of his duty, it was held, in the case of Mosley v. State, 23 Tex. App. 409, 4 S. W. 907, that it was the right of a peace officer to arrest without warrant one who interferes with him while he is discharging his duty as a public peace officer. This doctrine is also announced in the case of Riggs v. Commonwealth (Ky.) 33 S. W. 413; 5 Corpus Juris, 409, and cases cited thereunder.

Appellant contends that his right as a citizen should be guarded, and that he should not be interfered with nor his liberty taken, except in cases where the sheriff had actual authority to so arrest him. This has been the established doctrine of America and of Texas since their inception. On the other hand, there is just as great a necessity that officers in the discharge of their duties as public servants in the protection of society be not interfered with. There is nothing that will make the government more stable than that the officers execute processes in an orderly and efficient manner; and to permit citizens, without cause or excuse, to interfere with them, is just as dangerous to society as it is to take the liberty of a man, without due process of law. Hence we must hold that the officer in charge of the execution of the warrant on Martin Haverbekken should be commended for the act of arresting one interfering with him in his lawful duty, rather than criticized; and that he had a right to so arrest the appellant, under the

facts in this case, for interfering with him in the exercise of his duty as an officer. The courts are almost unanimous in their holdings, where they speak of the rights of a peace officer to arrest one without warrant for a threatened breach of the peace, that a threatened breach of the peace will not justify an arrest without warrant, unless the facts are such as would warrant the officer in believing an arrest necessary to prevent an immediate execution thereof, as where the threat is made coupled with some overt act in attempted execution thereof. In such cases the officer need not wait until the offense is actually committed. The object of permitting an arrest under some circumstances is to prevent a breach of the peace, where facts show danger of its being immediately committed; and, in this case, even though Chris Haverbekken did not take hold of either appellee or his brother Martin Haverbekken, yet by his words, gestures, and acts at the time placed himself in such a position as to warrant the sheriff in arresting him, without warrant, for interfering with him as a peace officer, and committing a breach of the peace in his presence. This doctrine was announced in Quinn v. Heisel, 40 Mich. 576; Giroux v. State, 40 Tex. 97.

[4] Appellant, by his third and fourth propositions, complains of the action of the trial court in failing to instruct a verdict in his behalf, because the uncontradicted evidence showed that the sheriff failed to take him before the nearest magistrate. Article 264 of the Code of Criminal Procedure, Revised Criminal Statutes 1911, provides:

"In all the cases enumerated in this chapter, the person making the arrest shall immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate, where the arrest was made, without an order."

It has been the universal opinions of courts, so far as we can ascertain, that it is a substantial compliance with statutes like the one quoted above to carry the person to the most accessible magistrate, although not the nearest, where it is further shown that less time would probably be consumed by reason of better roads, or better railroad facilities to the place of greater distance. It could happen that because of natural barriers, such as mountains, swollen streams, and the like, the nearest magistrate could not be reached at all, the whole purpose of the rule being to get the accused, in the shortest time possible, before a magistrate, that he may establish his innocence and be discharged; and in case a complaint is filed, it makes effective the justification of the conduct of the person making the arrest, and shows probable cause unmistakably.

The evidence in this case is sufficient to warrant the sheriff in carrying the appellant to Gatesville, Tex., in that it was shown that the roads were better, and that it would consume less time to carry him to Gatesville than to Pancake, which was probably a shorter distance, on account of the condition of the roads to Gatesville, Tex. 25 Corpus Juris, 491, and cases cited thereunder.

[5] As to the action of the sheriff after arrival with his prisoner at Gatesville, Tex., as complained of in appellant's propositions Nos. 6 and 7, we think the court correctly charged the law as to the duties of the sheriff in bringing the party before the magistrate. It is as follows:

[6] After stating special issue No. 2, the court gave the following as the law for the guidance of the jury in answering the question:

"For your guidance in answering the foregoing question, you are instructed that the law requires an officer making an arrest without a warrant to immediately take the person arrested before the nearest magistrate where the arrest was made. In this connection, you are further instructed that the law guards jealously the liberty of a citizen, and when an officer arrests a citizen without a warrant for his arrest, he does so at his own peril, and in this case you are instructed that it was the duty of the defendant Hollingsworth to comply with the law with reference to immediately taking plaintiff before the nearest magistrate; and a magistrate within the meaning of the law in this case is the district judge, county judge, any county commissioner, or any justice of the peace of the county where the arrest was made; and unless you believe from the evidence before you that the defendant Hollingsworth used all effort to do so that a highly cautious and prudent man could practically have done under the same or similar circumstances, your answer to this question should be, 'No.' On the other hand, if you believe from the evidence that the said Hollingsworth used all the effort to do so that a highly cautious and prudent man could practically use under the circumstances, your answer to the question should be, 'Yes.'"

The evidence shows that appellee carried appellant to his office upon arrival at Gatesville, which was about dark on the evening of the arrest; that he went out in search of Judge Bell, the county judge, and was informed that he was out of town, or not accessible. Appellee then went to the office of the justice of the peace, who was not at his office, presumably he had gone home; that the justice of the peace was old and never came back to his office at night; that appellee did not make any search for a commissioner, because the commissioner lived at a considerable distance from the courthouse; nor did he make any search for the district judge. The appellant made no demand that he should be carried before a magistrate; nor does the record show that he was able, if carried before a magistrate, to make bond until his father and brother came on the following day. It further shows that the sher-

iff found the county attorney of Coryell county, and told him all of the facts and circumstances of the case, and the county attorney advised him that he should put the appellant in jail, and that he would file a complaint against appellant on the following morning. The sheriff was absent on the following morning, but instructed his deputy to bring appellant before the officers as soon as they came the next morning, which was done.

[7] The question of fact having been submitted to the jury under proper instruction, and they having found in favor of the appellee upon such issue, we do not feel that the verdict of the jury should be disturbed, as there is ample testimony to support the same. Where a verdict of the jury is found upon conflicting evidence, it will not be disturbed on appeal. No authorities are necessary upon this proposition.

By appellant's seventh proposition he complains of the action of the trial court in submitting, in special issue No. 2, the instructions for guidance of the jury, the word "practically" as set forth therein. We find no error in such definition, as the court very clearly charged the jury that the sheriff must act as a highly cautious and prudent man should have practically done under the same circumstances, and we think it correct.

Finding no error in the record, we are therefore of the opinion that the same should be affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant contends that we were in error in finding that appellant used the following language of and concerning the appellee: "No, G——— d——— you, you are not going to arrest Martin."

We were in error in the use of this language, but the same was not a material finding to our opinion, as is shown by the opinion. He did curse Medo Johnson in the presence and hearing of the officers, and he did say to the officers: "No, G—— d—— it, you are not going to arrest Martin."

One witness did testify that—

"He (meaning Hollingsworth) did not arrest him then because he would not leave the gate, but because he was cursing so bad."

Hollingsworth testified:

"He just got between Martin and the car as if he was not going to let him get in. Chris was cursing and talking loud at the time, and I just tapped him on the shoulder and told him I was going to take him to town too."

With this correction of our findings of fact we are of the opinion that we have correctly decided this case, and the motion is overruled.