## OSOBA v. WILSON.

### No. 9786.

Court of Civil Appeals of Texas. Galveston.

Jan. 5, 1933.

Rehearing Denied Jan. 26, 1933.

Emanuel Roos, of Eagle Lake, and Jos. V. Frnka, C. R. Grobe, and G. H. Miller, all of Columbus, for appellant.

A. J. Lewis and John C. Hoyo, both of San Antonio, and O. E. Threlkeld, of Seguin, for appellee.

LANE, Justice.

On the 23d day of January, 1929, at or about the hour of 10:30 p. m., L. Glenn Wilson was arrested at a hotel in Eagle Lake, Tex., by Joe Osoba, city marshal of the city of Eagle Lake, and a deputy sheriff, without a warrant of arrest. He was then taken to Columbus, the county site of Colorado county, Tex., and delivered to the sheriff of said county about 12 o'clock midnight, who put him in jail, where he remainded for about two days, at which time he was released.

L. Glenn Wilson, hereinafter referred to as Wilson, brought this suit against Joe Osoba and others, whose names are unnecessary to be mentioned as they are not parties to this appeal, to recover compensatory damages in the sum of $5,000 upon his allegation that he was illegally and unlawfully arrested by Joe Osoba who had no warrant for his arrest and was by Osoba illegally restrained of his liberty, and by the sheriff confined in jail. There was no allegation that he was not taken before a magistrate. Such fact was not alleged as constituting any part of the plaintiff's cause.

Joe Osoba, after general demurrer and general denial, alleged that he arrested the appellee for unlawfully and willfully using loud, vociferous, and profane language and for swearing and cursing in a manner calculated to disturb the inhabitants of said hotel, a public place visited by people for recreation, business, and pleasure, which unlawful acts were committed by appellee in his presence; that he placed appellee under arrest without warrant and immediately thereafter searched the appellee and found upon his person the sum of $515.98, consisting principally of new $20 bills in United States currency, which sum and the denominations thereof suited the description of a sum of money which he was informed was obtained in a robbery committed at Houston, Tex., on the same day; that, after searching appellee's grip, he found an automatic .32 caliber pistol, a box of cartridges, files, punches, chisels, hammer, and a bottle of quicksilver; that on the afternoon of the same day he received information from W. F. Kessler, chief of detectives of Houston, Tex., that one Dr. Reeves had been

robbed of approximately said sum of money found upon the person of appellee and of practically the same denominations; that the offender was making his escape in the direction of Eagle Lake, Tex., and directing this appellant to detain and arrest the offender, which information also gave the description of the appellee in clothes, height, weight, approximate age, and personal appearance; that appellant believed that appellee, then under arrest for a breach of peace committed in his presence, was the person who had committed the felony in Harris county and was about to escape; that the said W. F. Kessler was a credible person; and that said information appeared to him as a peace officer satisfactory that appellee was the offender and was about to escape. Appellant admitted in his pleading that after the arrest of appellee he conveyed him to jail at Columbus, and that on the following morning he filed a complaint against appellee for disturbing the peace; that the arrest of appellee was made by him in good faith and upon proper cause for a violation of law, and not to injure, harass, humiliate, or embarrass appellee.

### Facts.

The plaintiff testified to the facts stated in our preliminary statement. He testified that when he was turned over to the sheriff he was given the privilege of choosing the cell in which he was to be confined, and that he chose what was known as the death cell; that the bed furnished him had the odor of creosote or some disinfectant; that he registered at the hotel in Eagle Lake, placed a long-distance telephone call, retired to his room, and that he was visited by the hotel night clerk several times and then by Joe Osoba; that Joe Osoba conducted him downstairs to the lobby of the hotel, searched him, questioned him at length, cursed, insulted, and heaped indignities upon him, placed him in an automobile, and conducted him to jail at Columbus, where he was retained for about 57 hours; that at no time did he see a warrant for his arrest, and that no one said anything about a warrant; that he did not appear before a magistrate or justice of the peace; that there was no accusation against him by any one to the effect that he had committed some offense, except that Joe Osoba, after he had found $515 on his person, said, "I think I know you, I think I want you"; that no one accused him of disturbing the peace. In effect, he testified that he was arrested by defendant without a warrant and placed in jail for 57 hours; that, when defendant came to his room, he said, "What do you mean trying to beat a telephone bill"; that defendant stated at that time that he was a deputy sheriff and demanded that he open his door; that, when he started to explain his controversy with the telephone operator and the cause of his refusal to pay the charges demanded, defendant said, "Get on your clothes and go down stairs and see the

Manager of the telephone company who is coming down"; that he dressed and went down with defendant, who had a gun on; that defendant was very rude and insulting to him.

Harigel, a district manager of the telephone company, testified that one of the telephone operators told him that plaintiff had refused to pay a balance due for a phone call, and asked him to attempt to collect such balance; that, after he had tried, through the hotel clerk, to make such collection and had failed, he called the defendant, Osoba, and told him that plaintiff owed an overcharge on a telephone call which he refused to pay; that he called Osoba because he wanted a peace officer, as he heard plaintiff one time using loud vociferous language in the lobby of the hotel; that, when he asked plaintiff about the bill, he said the telephone company was nothing but a "God damn bunch of high-jackers."

Defendant testified that he was at the time of trial city marshal of Eagle Lake; that he was a deputy sheriff on January 23, 1929, holding the appointment under Jack Hillner, sheriff of Colorado county; that the White House Hotel and Café is a place visited by people for recreation, business, and pleasure, a public place; that the hotel has a lobby in the rear of the building; that he found plaintiff upstairs in his room and invited him to go downstairs to discuss the settlement of the telephone bill; that he introduced plaintiff to Mr. Harigel in the café, where they had a cup of coffee; that plaintiff and Harigel began talking about the telephone bill; that plaintiff got boisterous and began cursing the telephone company for being high-jackers and stuff like that, and that he cautioned him about that language and not to be loud; that after Mr. Harigel went to the booth plaintiff got to popping off about the God damn bunch of high-jackers, and he told him not to use profanity and he put him under arrest at that time; that about 4:30 or 5 o'clock on the day of arrest W. F. Kessler, chief of detectives of the city of Houston, called him over the phone and told him that there had been a holdup of Dr. Reeves in Houston and for him to be on the lookout for the offender; that Mr. Kessler gave him a description of the man and said for him to look out for the offender, and further stated, "If you find him the chances are he will have a bunch of bills on him and they will all be twenties"; that Kessler gave him a description of how the offender was clothed and everything over the telephone; that he told him of the amount of money that was taken in the robbery and the denominations of the bills; that he told him that he took $500 from Dr. Reeves if he remembered correctly and that they were mostly in $20 bills, practically new; that the money found on plaintiff's person was of that description, that the clothes plaintiff was wearing, his height and appearance fitted that of Mr. Wilson; that the dark suit plaintiff wore, the

light cap, low-quarter tan shoes, his height, age, complexion, color of hair, and build all fitted plaintiff; that Eagle Lake is about sixty-five miles from Houston, and that it was impossible for him to have gone to Houston and obtained a warrant there for the arrest of plaintiff without giving him an opportunity to escape; that Chief Kessler was a credible person; that, after he had made the arrest of plaintiff for breach of peace, he searched him and found the money, made the comparisons above mentioned, and then carried him to Columbus and turned him over to the sheriff; that he got back to Eagle Lake about 3:30 or 4 o'clock in the morning and filed a complaint against plaintiff for disturbing the peace; that he woke up the justice of the peace, signed and filed the complaint against plaintiff; that after the arrest of plaintiff he searched his grip and other effects and found among other things a .25 automatic, a box of cartridges, some punches, pliers, chisel, and a bottle with about a pound of quicksilver in it; that plaintiff made no offer to give bail, nor request to be carried before a magistrate.

W. F. Kessler, a witness for defendant, and chief of detectives of Houston, stated that the afternoon of the day of the arrest he was telephoning descriptions of three men wanted at Houston for committing a robbery, and that defendant was one of the officers that he telephoned; that he telephoned the descriptions as given by Dr. Reeves, from whom about $500 was taken; that he had a communication from defendant the next day, and that the description of plaintiff as given to him would suit the description of the party that he was looking for.

Testifying further, he said that he asked defendant to hold the man in jail; that he had a warrant for him, and asked defendant to hold him long enough for Dr. Reeves to come and look at him; that he immediately telephoned Dr. Reeves to go to Columbus and look at the man.

Defendant testified that after he had turned plaintiff over to the sheriff he went back to Eagle Lake about 4 o'clock and filed a complaint with the justice of the peace against plaintiff for disturbing the peace.

The sheriff testified that he gave the plaintiff a clean mattress, sheets, pillow, and blanket off of his own bed to make him as comfortable as possible, and asked him if he had plenty of covering, and that plaintiff said he did not need any more; that the bedding was not dirty, nor did it smell stuffy and lousy; that it was not treated with disinfectants as testified to by plaintiff; that plaintiff never complained of being cold, as testified by him; that he made no offer to give bail, nor request to be carried before a magistrate.

The plaintiff, in rebuttal, testified that he did not use the loud and profane language, as testified to by defendant, Osoba.

Upon the pleadings, the material facts as we have substantially stated them, and the testimony stated, the court instructed the jury that plaintiff, Wilson, was entitled to recover against defendant, Joe Osoba, and that the only question for them to determine was the amount of damages to be assessed against him, and then he instructed the jury to find what sum of money, if paid at once, would reasonably compensate the plaintiff for the injuries he had sustained by reason of having been restrained of his liberty, or confined in jail by Osoba; that in answering such question they might take into consideration the mental and physical pain suffered by the plaintiff, if any, as well as any injury to his reputation or social standing.

In response to the question submitted, the jury found compensatory damage for the plaintiff in the sum of $1,000.

Upon such answer of the jury, the pleadings and evidence, the court rendered judgment for L. Glenn Wilson against defendant, Osoba, for $1,000, and from such judgment Osoba has appealed.

■ Appellant insists: That the court erred in charging the jury that appellee, Wilson, is entitled to a recovery against him by reason of appellee's having been restrained of his liberty, or confined in jail, in that appellee has in no manner directly nor impliedly alleged that he suffered any manner of damage or injury because appellant failed to take him before a magistrate at the time of his arrest, at or near the midnight hour; that, to the contrary, appellee by his pleading based his right of recovery solely upon his allegation of an illegal arrest and his subsequent detention, and in that there was ample evidence tending to show that appellant lawfully arrested appellee without a warrant to carry such issue to the jury, as it tends to show that appellee was at the time of such arrest guilty of the offense of "disturbing the peace," which is defined by article 474 of our Criminal Statutes (Pen. Code) as follows: "Whoever shall go into or near any public place * * * and shall use loud and vociferous, or obscene, vulgar, or indecent language or swear or curse, * * * in a manner calculated to disturb the inhabitants of such place or house, shall be fined not to exceed one hundred dollars." That such charge was also erroneously given to the jury, in that the undisputed evidence shows that prior to the arrest of appellee it had been shown to appellant by satisfactory proof, upon the representation of W. F. Kessler, chief of detectives of the city of Houston, a credible person, that a felony had been committed, and that the description of appellee and other circumstances shown pointed to appellee as the one who had committed such felony.

Under such circumstances appellant was justified, by virtue of the provisions of article 215, Criminal Procedure, to arrest appellee without a warrant.

■■ We sustain the contention that the charge complained of was erroneously given. Appellant timely objected to such charge, and requested the court in due form to instruct the jury that, if they should find from the evidence that the plaintiff, just prior to his arrest by the defendant, used loud, vociferous, and profane language, and did then and there swear and curse in the presence of defendant, Joe Osoba, in a manner calculated to disturb the inhabitants of the hotel café, a public place, defendant was authorized by law to arrest the plaintiff without a warrant of arrest, and that, if they should so find, they should find for defendant.

Defendant also requested the court to submit to the jury the following special issue: "You are instructed that if you find from the evidence that the defendant, Joe Osoba, acted in compliance with the law and upon satisfactory proof of a credible person, to-wit, W. F. Kessler, Chief of Detectives of Houston, Texas, that a robbery had been committed in Houston, Texas, on January 23, A. D. 1929, and that one of the parties sought for such offense had escaped and was making his way in the direction of Eagle Lake, Texas, and that the defendant acting upon such information detained the plaintiff, and that the description of the offender so attempted to be apprehended by the said Kessler suited and fitted the description of the plaintiff, in dress, effects and personal appearance, you will find for the defendant, Joe Osoba, and the court further instructs you that if you believe from the evidence that the defendant was informed by the said Kessler that the offenders or persons so sought for the aforesaid offense of robbery were making their escape or were about to make their escape before he could procure a warrant, you are instructed that the defendant acted within the law in detaining the plaintiff, and you will find for the defendant, Joe Osoba."

Both of such special charges were by the court refused. We think both of such requested charges should have been given to the jury.

By article 212, Code of Criminal Procedure of 1925, it is provided that a peace officer may, without warrant, arrest any offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an "offense against the public peace."

By article 214 it is provided as follows: "The municipal authorities of towns and cities may establish rules authorizing the arrest, without warrant, of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

Article 215 is as follows: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

In Minter v. State, 70 Tex. Cr. R. 634, 159 S. W. 286, at page 291 and 292, it is said: "The municipal authorities of towns and cities may establish rules authorizing the arrest, without warrant, of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace. * * * In fact, the whole theory and purpose of our laws are that the peace officers especially shall do everything and all things necessary or proper to prevent, suppress, and punish crime."

In Ex parte Preston, 72 Tex. Cr. R. 77, 161 S. W. 115, at page 116, it is held that article 261 (now 214), Code of Criminal Procedure, authorizes municipal authorities to establish rules authorizing the arrest, without warrant, of persons found under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace.

In Presley v. Ft. Worth & D. C. Ry. Co. (Tex. Civ. App.) 145 S. W. 669, it is held that, where in an action for damages for an arrest without a warrant in a town it conclusively appeared that the arrest was justified, if made under an ordinance passed in accordance with article 214, Code Crim. Proc. 1925, the burden was upon the plaintiff to show that no such ordinance had been passed.

■ In 19 Texas Jurisprudence, § 23, at page 570, it is said: "If the arrest is legal, the burden rests upon the plaintiff to show that the arresting officer had authority to take bail, that bail was offered and refused, and that the officer failed to carry the plaintiff immediately before the nearest magistrate for examination. There is nothing in the policy of the statute which prohibits a person accused of a crime from waiving his right or the time in which he should be carried before a magistrate; proof of such waiver is a defense in an action for false imprisonment."

In Haverbekken v. Hollingsworth (Tex. Civ. App.) 250 S. W. 261, at page 265, it is said: "The appellant made no demand that he should be carried before a magistrate; nor does the record show that he was able, if carried before a magistrate, to make bond until his * * * brother came on the following day." See Sheehan v. Holcomb, 1 White & W. Civ. Cas. Ct. App. § 464.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.