CANNON et ux. v. AMERICAN INDEMNITY CO. et al.

No. 2579.

Court of Civil Appeals of Texas. Beaumont.

May 3, 1934.

Rehearing Denied May 9, 1934.

John R. Cox and C. M. Alderson, both of Houston, for appellants.

M. M. Feagin, V. A. Collins, Z. L. Foreman, J. F. Collins, P. R. Rowe, Jas. E. Hill, Jr., and R. H. Jones, all of Livingston, G. C. Lowe, of Woodville, and Campbell, Murphy & Cochran, of Livingston, for appellees.

WALKER, Chief Justice.

This was an action by appellants, F. L. Cannon and wife, against appellees, R. D. Holliday, sheriff of Polk county, and his surety, American Indemnity Company, for damages for false arrest. Judgment was for appellees upon trial to the court without a jury, which has full support in the conclusions of fact filed by the trial judge. The arrest was made under a search warrant directing the search of certain permises and the arrest of appellant F. L. Cannon. The warrant was issued upon an affidavit made by Sheriff Holliday and his deputy J. B. Layton. In form the affidavit and search warrant were in strict compliance with the provisions of article 691, Penal Code 1925.

There is no merit in the proposition that the affidavit was based upon "information and belief" of the affiants. The premises to be searched were particularly described and it was further stated "that at said place intoxicating liquors are possessed, sold, transported, manufactured in violation of law; and that at such place are kept containers,

and instrumentalities used or to be used in the unlawful possession, sale, manufacture, and transportation of intoxicating liquors."

■ We overrule the proposition that the sheriff and his deputy were not "competent" persons to make the affidavit. The contention seems to be that the language of article 691, supra, and the "public policy of the State," disqualified the sheriff and his deputy from making the affidavit; and that the warrant issued thereon was absolutely void. The argument is that, because under article 1040, Code of Criminal Procedure 1925, the sheriff is allowed compensation for the support and maintenance of his prisoners, the execution of the search warrant amounted to the execution of "process in his own favor." These contentions are without force. There is nothing in the general statute disqualifying the sheriff and certainly the fact that he made the affidavit violates no principal of public policy.

■ The evidence raised issues supporting every statement in the affidavit. Though the private residence, searched by appellee, belonged to Mrs. R. H. Mills, F. L. Cannon's mother-in-law, and she was living there at the time of the search, the evidence was further to the effect that F. L. Cannon had been living with his mother-in-law possibly as long as three months and was using the premises as headquarters for a somewhat extensive bootlegging business. Many gallons of beer were seized at the time of the search and utensils for bottling beer were also seized. The evidence was further to the effect that this beer was intoxicating. Drunken persons were arrested on the morning of the search as they were leaving the searched premises and the personal check, payable to F. L. Cannon, of one of the persons arrested was also seized in the search. Though there was testimony to the effect that this check was in payment of chickens, the circumstances were sufficient to warrant the inference that it was issued in payment of bootleg beer. There was testimony that other persons bought intoxicating liquor from F. L. Cannon; that it was customary to send persons to the searched premises to buy intoxicating liquor from Cannon; and that no secret was made in that community of that fact.

■ ■ There is no merit in the contention that Sheriff Holliday unlawfully restrained appellant F. L. Cannon after his arrest, by refusing him an examining trial. But, on the contrary, the evidence fully supports the following fact conclusion made by the court on this issue:

"That plaintiff, F. L. Cannon, was fully advised of his right to be carried before a magistrate at Livingston, but preferred to and did agree to await an examining trial to be held on the day of the regular term of Justice Court in said month, proposing and attempting to make an appearance bond for his appearance at such examining trial and before such examining court, and did waive examining trial and gave appearance bond to await the action of the grand jury on the charge against him, which was filed against him on October 13th, 1932, and charged possession of intoxicating liquor for purpose of sale"

—except on the immaterial point that the arrest was made in 1930 instead of 1932. In support of this fact conclusion we make the following statement from the statement of facts. Mrs. F. L. Cannon, wife of Frank Cannon, testified: "I did not come to town that Sunday. The first time I came to town was on the next morning—Monday morning. I didn't remain in town all day. I came to town in a car. I got a bond on that day. I tried to get the bond fixed and get him out of jail. I saw Frank that day. Frank told me to try to get him out of jail and he would write to his daddy. * * * I couldn't get the bond fixed. * * * The next day after he was arrested, Mr. Holliday gave me a bond. * * * It was a bond to get him out of jail. * * * On the first bond I had, I got some people on it, but they wouldn't accept it; it wasn't any count. * * * He told them it was all right to fix the bond and he said he would accept it. I didn't understand that this bond was to bind him over to wait the action of the grand jury; all I understood was that it was to get him out of jail." Frank Cannon, appellant, testified: "After they put me in jail and my wife first appeared up there, I asked her to try to get me a bond and she said she would. She went ahead and tried and tried to get it and she failed on the first one because the makers of the bond weren't worth it. * * * The bond I gave, as I understand it, was to get me out of jail. * * * I didn't know anything about this bond except that it was to get me out of jail. * * * I knew my bond had been set at $500.00. I knew that was the amount both times." Z. L. Foreman, county attorney, testified: "I am County Attorney of Polk County. During the

month of October, 1930, I was County Attorney. * * * I know that the next day, Monday, his wife was down here making an effort to make his bond. I knew Mrs. Cannon before this; I got this lady a divorce in January, 1930. She was down here and talked to me about a bond, and the bond at that time would have been a bond to appear before the regular Justice Court, which if I am not mistaken, is the 27th day of October. At that time the sheriff's department fixed the bond to appear for the regular court day. I sent her to those people to get the bond. * * * Later on she came to me with a bond. It was a bond to appear before Justice Court, which I think was the day of the 27th of October. This bond stated to appear before M. S. Tew to answer a complaint filed in the Justice Court for that date. When she brought that bond to me that date had passed. She wanted to waive examining trial. I then fixed up a bond of that kind and wrote it out for her. * * * If they demand an examining trial, I will give it to them the next day, if I can get my witnesses ready. If a man indicated to me that he wanted an examining trial I will give it to him. I have no desire to see anybody in jail. I would be plum perfectly willing to given him an examining trial on any day. If a man is arrested on the 29th day of October, I would not keep him in jail until the fourth Monday in the next month if he wanted an examining trial. If he were interested in his case, he would get his witnesses and we would have an examining trial. I would be glad to have the examining trial the next day. * * * He could have an examining trial if he wanted it. * * * It is not our position or intention to keep anybody in jail any length of time after he makes bond. * * * A man under the law is entitled to an examining trial immediately after he is arrested if he demands it. There was no demand made to me nor to the Justice of the Peace. I know Mr. Gore well enough to know that any time this man wanted to come to the court house Mr. Gore would have brought him up there. * * * He didn't get an examining trial because he or no person interested in him requested one, but I will say we were ready and willing at any time, and the officers would have been glad to give him one. * * * He could have gotten out in fifteen minutes if he were able to make the bond." Sheriff Holliday testified: "I placed Frank Cannon in jail. The next morning his wife came down here for the purpose of getting him out of jail and I wrote her out a bond. She took the bond with her. Frank Cannon never opened his mouth to me in regard to an examining trial and his wife never said a thing to me. I didn't have a bit of objection to him having an examining trial. His wife took the bond with her. She got some sureties on the bond but I turned it down because they weren't worth the bond. I am sure I gave her the bond back and told her that the sureties weren't worth it. * * * I didn't have any objection in the world to him making bond. I prefer for the prisoners to make bond because they are less trouble when they make bond. If his wife had brought me a bond with the proper sureties on it I would have released him right then. Mr. Layton or Mr. Gore would have released him."

The further contention is also made that the agreement by appellant to waive the examining trial, even if made, was void and in violation of the public policy of the state, because under the agreement Sheriff Holliday was given the right to hold appellant in jail and to collect compensation from the county for his support and maintenance. The following authorities directly hold against that contention: Osoba v. Wilson (Tex. Civ. App.) 56 S.W.(2d) 937; Branch v. Guinn (Tex. Civ. App.) 242 S. W. 482; Bishop v. Lucy, 21 Tex. Civ. App. 326, 50 S. W. 1029; Cargill v. State, 8 Tex. App. 431; Tex. Jur., vol. 19, pp. 569, 570; Texas Code Criminal Procedure, art. 288; Haverbekken v. Hollingsworth (Tex. Civ. App.) 250 S. W. 261; Sheehan v. Holcomb, 1 White & W. Civ. Cas. Ct. App. § 464. In 19 Tex. Jur., § 23, at page 570, it is said:

"If the arrest is legal, the burden rests upon the plaintiff to show that the arresting officer had authority to take bail, that bail was offered and refused, and that the officer failed to carry the plaintiff immediately before the nearest magistrate for examination. There is nothing in the policy of the statute which prohibits a person accused of a crime from waiving his right or the time in which he should be carried before a magistrate; proof of such waiver is a defense in an action for false imprisonment."

It follows that the judgment appealed from should be in all things affirmed, and it is accordingly so ordered.